UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

LISA MIAOLINO,

       Plaintiff,

v.                                       Case No:   2:18-cv-494-FtM-UAM

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.

_____

## OPINION AND ORDER

Plaintiff, Lisa Miaolino, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and Disability Insurance Benefits ("DIB"). The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint memorandum setting forth their respective positions. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

    **I.**     **Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

    **A. Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905. The impairment must be severe, making the claimant unable to do her previous work, or any other

substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

### B. Standard of Review

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate support to a conclusion. Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law. *Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case. Social Security Act, § 205(g), 42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability. 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that she is not undertaking substantial gainful employment. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001), *see* 20 C.F.R. §

404.1520(a)(4)(i). If a claimant is engaging in any substantial gainful activity, she will be found not disabled. 20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that she is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278, 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit her physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that her impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1; *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If she meets this burden, she will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that her impairment meets or equals one of the impairments listed in Appendix 1, she must prove that her impairment prevents her from performing her past relevant work. *Id*. At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of her past relevant work. 20 C.F.R. § 1520(a)(4)(iv), 20 C.F.R. § 1520(f). If the claimant can still perform her past relevant work, then she will not be found disabled. *Id*.

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, she will be found not disabled. *Id*. In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d

1200, 1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the Grids"), and the second is by the use of a vocational expert ("VE"). *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that she is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d 1274, 1278 n.2 (11th Cir. 2001).

**C. Procedural History**

Plaintiff filed an application for a period of disability and DIB on February 10, 2015. (Tr. 312-13). Plaintiff's application was denied initially on September 4, 2015, and upon reconsideration on November 4, 2015. (Tr. 249-51, 254-58). Plaintiff requested a hearing, and, on February 2, 2017, an administrative hearing was held before Administrative Law Judge Eric Anschuetz ("the ALJ"). (Tr. 164-222). On June 1, 2017, the ALJ entered a decision finding that Plaintiff was not disabled. (Tr. 11-21). Plaintiff requested review of the ALJ's decision, and, on May 16, 2018, the Appeals Council denied review of the ALJ's decision. (Tr. 1-8). Plaintiff initiated this action by Complaint (Doc. 1) on July 13, 2018.

**D. Summary of the ALJ's Decision**

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since February 1, 2015, the alleged onset date. (Tr. 13). At step two, the ALJ found that Plaintiff had the following severe impairments: fibromyalgia and lupus. (Tr. 13). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 15).

Before proceeding to step four, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to

> perform light work as defined in 20 CFR 404.1567(b), subject to the following limitations. The claimant can lift and/or carry up to 20 pounds occasionally, and up to 10 pounds frequently. She can stand and/or walk for up to 6 hours total in an 9-hour workday, and sit for up to 6 hours total in an 8-hour workday. She should avoid concentrated exposure to extremes of heat and cold, wetness, humidity, fumes, odors, dusts, and gases. She can frequently use her left, non-dominant hand for lifting and carrying. She has no limitations as to right hand use. She has no mental limitations.

(Tr. 15). At step four, the ALJ found that Plaintiff was capable of performing her past relevant work as a childcare teacher and cashier 2, as such work does not require the performance of work-related activities precluded by Plaintiff's RFC. (Tr. 19).

Despite finding that Plaintiff could perform her past relevant work, the ALJ proceeded to step five and made alternative findings. The ALJ found that considering Plaintiff's age, education, work experience, and RFC, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (Tr. 24). Relying on the testimony of a vocational expert ("VE") the ALJ found that Plaintiff was capable of performing such jobs as gate guard, order filler, and food checker. (Tr. 21). The ALJ concluded that Plaintiff has not been under a disability since February 1, 2015, through June 1, 2017, the date of the decision. (Tr. 21).

**II.    Analysis**

Plaintiff raises three issues on appeal: (1) whether the ALJ erred at step two by failing to find that Plaintiff's cervical spine degenerative disc disease and carpal tunnel syndrome were severe impairments and by failing to pose a complete hypothetical question to the vocational expert; (2) whether the Appeals Council erred by failing to consider newly submitted evidence;

and (3) whether Plaintiff has made a timely Appointments Clause challenge. The Court will address each issue in turn.

**(a) Whether the ALJ erred at step two by failing to find that Plaintiff's cervical spine degenerative disc disease and carpal tunnel syndrome were severe impairments and by failing to pose a complete hypothetical question to the vocational expert.**

Plaintiff argues that the ALJ committed reversible error by failing to address whether Plaintiff's bilateral carpal tunnel syndrome and cervical spine degenerative disc disease were severe impairments. (Doc. 26 p. 15). Plaintiff contends that the medical record contains substantial evidence demonstrating that her bilateral carpal tunnel syndrome and cervical spine degenerative disc disease are severe impairments. (Doc. 26 p. 15-19). In addition, Plaintiff argues that the ALJ's hypothetical question to the vocational expert was incomplete by failing to account for Plaintiff's limitations due to her bilateral carpal tunnel syndrome and cervical spine degenerative disc disease. (Doc. 26 p. 18-19).

In response, Defendant argues that the ALJ committed no error at step two because the ALJ found that Plaintiff had severe impairments and continued to the subsequent steps of the sequential evaluation. (Doc. 26 p. 20). Further, Defendant argues that Plaintiff has failed to show that her cervicalgia and carpal tunnel syndrome caused additional limitations beyond those for which the ALJ accounted. (Doc. 26 p. 21). Finally, Defendant argues that substantial evidence supports the ALJ's RFC finding and that the hypothetical question was derived from RFC. (Doc. 26 p. 24).

At issue here is step two of the ALJ's disability determination, where severity is analyzed. At step two, "[a]n impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *McDaniel v. Bowen*, 800 F.2d 1026, 1031

(11th Cir. 1986). A severe impairment must bring about at least more than a minimal reduction in a claimant's ability to work, and must last continuously for at least twelve months. *See* 20 C.F.R. §§ 404.1505(a). This inquiry "acts as a filter" so that insubstantial impairments will not be given much weight. *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). While the standard for severity is low, the severity of an impairment "must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality." *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986).

According to the Eleventh Circuit, "[n]othing requires that the ALJ must identify, at step two, all of the impairments that should be considered severe," but only that the ALJ considered the claimant's impairments in combination, whether severe or not. *Heatly v. Comm'r of Soc. Sec.*, 382 F.App'x 823, 825 (11th Cir. 2010). If any impairment or combination of impairments qualifies as "severe," step two is satisfied and the claim advances to step three. *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 852 (11th Cir. 2013) (citing *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)).

In this case, the ALJ found that Plaintiff had two severe impairments, i.e., fibromyalgia and lupus, and then continued on in the sequential evaluation process. Because the ALJ determined that Plaintiff suffered from at least one severe impairment at step two and thereafter proceeded beyond that stage as he did, any error he committed in failing to find that Plaintiff suffered from other severe impairments at step two is rendered harmless. *Gray v. Comm'r of Soc. Sec.*, 550 F. App'x 850, 853-54 (11th Cir. 2013) (per curiam); *Packer*, 542 F. App'x at 892; *Heatly*, 382 F. App'x at 824-25.

Furthermore, the ALJ specifically acknowledged Plaintiff's carpal tunnel syndrome and cervical spine problems in formulating Plaintiff's RFC and Plaintiff has failed to show that Plaintiff experienced limitations greater than found by the ALJ in his RFC finding. (Tr. 18).

As Defendant notes, no medical source opined that Plaintiff experienced significant limitations due to her cervicalgia and carpal tunnel syndrome. Plaintiff failed to show that her cervicalgia and carpal tunnel syndrome, whether severe or not, caused additional limitations beyond those for which the ALJ accounted. *See Sanchez v. Comm'r of Soc. Sec.*, 2013 WL 490029, at *4 (11th Cir. Feb. 8, 2013) (affirming where RFC finding accounted for all limitations and claimant failed to show additional limitations from unmentioned impairment). Contrary to Plaintiff's argument, the ALJ limited Plaintiff to frequent use of her left, non-dominant hand for lifting and carrying, which sufficiently accommodated Plaintiff's left upper extremity. (Tr. 15).

The ALJ explained that he found that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms not entirely consistent with other evidence of record. (Tr. 16). The ALJ noted that the objective evidence in the record did not support the symptom severity alleged by the Plaintiff regarding gait and extremity strength deficits. (Tr. 17, 482, 549, 585, 653, 811, 822, 865, 896). For instance, a July 2014 examination confirmed muscle strength 5/5 in all extremities. (Tr. 482, 549). While the ALJ acknowledged a slight reduction in grip strength and reduction in right triceps reflex (Tr. 18, 579-80), an examination showed intact grip strength, and normal gait and strength in extremities. (Tr. 17, 653). In 2015, Plaintiff had normal sensation, reflexes, coordination, and muscle strength and tone. (Tr. 585, 865, 896). In 2016, Plaintiff had 5/5 strength in upper and lower extremities, no evidence of focal neuromuscular weakness, and normal motor tone. (Tr. 811, 822). This evidence fails to support Plaintiff's allegations of disabling physical limitations.

Plaintiff's mild medical records and conservative treatment further support the ALJ's finding. *See* 20 C.F.R. § 404.1529(c)(3)(v). For example, the ALJ noted that Plaintiff's exam was largely unremarkable, and despite tender spots with joint warmth and tenderness in wrists, she had no clubbing, cyanosis, edema, or deformity in extremities with normal full range of motion of all joints. (Tr. 17, 639). In May 2016, Plaintiff had 5/5 wrist grip strength and rotator cuff strength, with full range of motion of hands, wrists, elbows, and shoulders. (Tr. 827). By September 2016, the ALJ noted, Plaintiff indicated that her current medications regimen had been improving her symptomatology, albeit with side effects of fatigue. (Tr. 18, 802). Moreover, as the ALJ noted, imaging studies showed degenerative changes in her bilateral wrists and cervical spine, but were assessed as mild. (Tr. 18, 947-48).

While Plaintiff was diagnosed with cervicalgia and carpal tunnel syndrome (Tr. 823), diagnoses do not establish limitations. *See Moore*, 405 F.3d at 1213 n. 6. The medical evidence records do not demonstrate that Plaintiff's cervicalgia and carpal tunnel syndrome more than minimally impacted Plaintiff's ability to function. (Tr. 482, 549, 585, 639, 653, 802, 811, 822, 865, 896, 947-48). *See Pritchett*, 315 F. App'x at 814-15. Plaintiff failed to prove that she had severe cervicalgia and carpal tunnel syndrome. *See Doughty*, 245 F.3d at 1278. Plaintiff also failed to meet her burden of proving that her cervicalgia and carpal tunnel syndrome, or her condition as a whole prevented her from performing past relevant work. *See Doughty*, 245 F.3d at 1278 n.2; *Jones*, 190 F.3d at 1228.

Turning to Plaintiff's arguments concerning the hypothetical question the ALJ posed to the vocational expert, the Court finds no error. In order for a VE's testimony to constitute substantial evidence to support the ALJ's decision, the ALJ must pose a hypothetical question to the VE that comprises all of the claimant's limitations. *See Wilson v. Barnhart*, 284 F.3d 1219,

1227 (11th Cir. 2002). Here, substantial evidence supports the ALJ's RFC finding and hypothetical question derived from the RFC. The ALJ properly relied on the VE's testimony to find that Plaintiff could perform past relevant work, and alternatively could perform other work and was not disabled. (Tr. 20-21).

### (b) Whether the Appeals Council erred by failing to consider newly submitted evidence.

After the date the ALJ entered his opinion on June 1, 2017, Plaintiff underwent an MRI of the cervical spine on July 12, 2017. The MRI revealed: mild straightening of the normal cervical lordosis which may be positional or related to muscular spasm with multilevel disc degeneration and mild to moderate facet arthropathy; diffuse congenital narrowing of the spinal canal which contributes to canal stenosis**;** C5-C6 mild to moderate spinal canal stenosis with deformity of the ventral cord and moderate to severe bilateral neural foraminal narrowing with possible mass effect on the exiting C6 nerve roots; C6-7 mild spinal canal stenosis and mild to moderate right and mild left neural foraminal narrowing; C4-5 mild spinal canal stenosis with deformity of the ventral thecal sac and mild bilateral neural foraminal narrowing; C3-4 flattening of the ventral thecal sac with mild right neural foraminal narrowing; motion artifact on the sagittal T2 weighted sequence partially limits evaluation of disc disease and the spinal cord. (Tr. 162-63).

Plaintiff submitted the MRI evidence to the Appeals Council, but the Appeals Council determined that the "additional evidence does not relate to the period at issue" and, therefore, "it does not affect the decision about whether you were disabled beginning on or before June 1, 2017." (Tr. 2).

Plaintiff argues that the Appeals Council erred by finding that the medical evidence submitted after the ALJ's decision did not relate to the period at issue. (Doc. 26 p. 25). Plaintiff contends that the MRI evidence is chronologically relevant because the imaging was

recommended by more than one provider before the hearing decision, because the findings are objective medical evidence that supports Plaintiff's many cervical spine complaints and degenerative disc disease, and because the ALJ was made aware at the administrative hearing that the imaging was forthcoming. (Doc. 26 p. 25-26). In response, Defendant argues that the Appeals Council properly determined that the new MRI evidence was not chronologically relevant. (Doc. 26 p. 28-30).

A claimant is generally permitted to present new evidence at each state of his administrative process. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1261 (11th Cir. 2007), and 20 C.F.R. §404.900(b). Evidence submitted for the first time to the Appeals Counsel is determined under a Sentence Four analysis. *Id*. An Appeals Council must consider new and material evidence that "'relates to the period on or before the date of the administrative law judge hearing decision' and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Id*. (20 C.F.R. §§404.970(b), 416.1470(b)). New evidence is considered material and thereby warranting a remand if "'there is a reasonable possibility that the new evidence would change the administrative outcome.'" *Id.*

In this case, the Court finds no error in the Appeals Council's finding that the new MRI evidence was not chronologically relevant. The new evidence was obtained nearly six weeks after the ALJ's decision, and does not relate to the relevant period—before the ALJ's June 1, 2017 decision. The new evidence provided no opinion on Plaintiff's limitations and instead, only provided diagnostic imaging of the cervical spine based on Plaintiff's condition as it existed after the relevant period. (Tr. 162-63). The new evidence did not provide any information about the onset of the cervical spine findings and the new evidence makes no mention of Plaintiff's condition prior to the ALJ's decision. (Tr. 162-63).

Plaintiff has failed to show that the evidence related back to the relevant time period. Accordingly, the Court affirms the Appeals Council's determination that the new MRI evidence was not chronologically relevant.

**(c) Whether Plaintiff has made a timely Appointments Clause challenge. The Court will address each issue in turn.**

Relying on the Supreme Court's recent decision *Lucia v. S.E.C.*, ⸺ U.S. ⸺, 138 S.Ct. 2044, ⸺ L.Ed.2d ⸺ (2018), Plaintiff argues that remand is necessary because the ALJ was not validly appointed pursuant to the Appointments Clause of the U.S. Constitution. (Doc. 26 p. 30-31). Plaintiff contends that her constitutional challenge is timely because the SSA does not require claimants to argue an issue to the agency prior to making the argument in court. (Doc. 26 p. 31) citing *Sims v. Apfel*, 530 U.S. 103, 108 (2000). In response, Defendant argues that the Court should deny Plaintiff's argument because it was never presented to the agency in the administrative process. (Doc. 26 p. 31-39).

In *Lucia*, the Supreme Court addressed the issue of whether ALJs of the Securities and Exchange Commission ("SEC") are "Officers of the United States" and, thus, subject to the methods of appointment set forth in the Appointments Clause of the Constitution. In the underlying case, the SEC had instituted an administrative proceeding against the petitioner and charged him with violation of the Investment Advisors Act. 138 S.Ct. at 2049-50. An ALJ adjudicated the case and, after a nine-day hearing, issued an initial decision concluding that the petitioner had violated the Act. *Id*. at 2050. On appeal to the SEC, the petitioner argued that the administrative proceeding was invalid because the ALJ had not been constitutionally appointed pursuant to the Appointments Clause. *Id*. The SEC rejected the petitioner's argument. *Id*. On appeal to the Court of Appeals for the D.C. Circuit, the ten members of the en banc court divided evenly on the issue, resulting in a per curiam order denying the petitioner's claim. *Id*.

The Supreme Court, noting that ALJs of the SEC hold a continuing office, exercise "significant discretion" when carrying out "important functions," rule on the admissibility of evidence, and have power to enforce compliance with discovery orders, ruled that ALJS of the SEC are "Officers of the United States" and are subject to the Appointments Clause of the Constitution. *Id*. at 2053. In considering the proper remedy for the petitioner, the Supreme Court noted that "'one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case' is entitled to relief." *Id.* at 2055 (quoting *Ryder v. United States*, 515 U.S. 177, 182-83, 115 S.Ct. 2031, 132 L.Ed.2d 136 (1995)). The Supreme Court determined that the appropriate remedy was a new hearing before a properly appointed official, other than the ALJ who originally decided the case (in the event that the ALJ received a constitutional appointment). *Id.*

In this case, the Court finds that Plaintiff has failed to show remand is appropriate. First, Plaintiff's argument is vague and conclusory, providing no specifics as to how the ALJ came into his position. In *Lucia*, the invalidity of the SEC ALJ's appointment was not in dispute. The Supreme Court noted that all SEC ALJs had been selected by SEC staff members, and not by the Commission proper. *Id.* at 2049. Here, the Court finds no reason to assume, without being shown, that the ALJ was not appointed in compliance with the Appointments Clause.

Even assuming that the ALJ was not appointed in compliance with the Appointments Clause, remand would be inappropriate. Unlike the petitioner in *Lucia* who raised the Appointments Clause challenge before the SEC, Plaintiff did not challenge the validity of the ALJ's appointment at the agency level before the ALJ or the Appeals Council but raised the issue for the first time before this Court. Because Plaintiff did not raise her Appointments Clause challenge at any point during the administrative proceedings, the Court finds that the issue is

waived. *See Abbington v. Berryhill,* 2018 WL 6571208, at *2 (S.D. Ala. Dec. 13, 2018) (listing cases in which district courts have held that Appointment Clause challenges to Social Security ALJs are forfeited when the claimant fails to raise the issue at the administrative level).

The Court rejects Plaintiff's argument that her Appointments Clause challenge is not untimely based on *Sims v. Apfel*, U.S. 103 (2000). The Ninth Circuit has recently rejected a similar argument, explaining that "*Sims* concerned only whether a claimant must present all relevant issues *to the Appeals Council* to preserve them for judicial review; the [Supreme] Court specifically noted that '[w]hether a claimant must exhaust issues before the ALJ is not before us.'" *Shaibi*, 883 F.3d at 1109 (second alteration in original) (quoting *Sims*, 530 U.S. at 107, 120 S.Ct. 2080). Because the issue is whether Plaintiff's challenge is timely being presented to this Court for the first time, *Sims* is not applicable.

Finally, the Court notes that the Supreme Court in *Lucia* did not make a blanket finding that all ALJs are subject to the Appointments Clause, but only that SEC ALJs were so subject. At the time of the Supreme Court's decision, the SEC had only five ALJs. *Lucia*, 138 S.Ct. at 2049. In contrast, there are currently over 1,700 SSA ALJs. *See* ALJ Disposition Data FY 2019, *available at* [https://www.ssa.gov/appeals/DataSets/03_ALJ_Disposition_Data.html]. The SSA conducts hundreds of thousands of hearings and adjudicates hundreds of thousands of disability claims each year. As Defendant notes, the SSA's Annual Performance Report indicates that in the past four fiscal years (FY) (FY 2014-FY 2017), the agency has received between 620,164 (FY 2017) and 810,715 (FY 2014) hearing requests each year and the agency completed more than 652,000 hearings each year during that same period, with a high of 685,657 hearings completed in FY 2017. *See* Social Security Administration, Annual Performance Report Fiscal Years 2017-2019, at 35. If the courts were to apply *Lucia* to Social Security cases as Plaintiff argues this Court

should, millions of cases would need be remanded for rehearing by a different ALJ. Given these important efficiency concerns and the Supreme Court's specific findings in *Lucia*, the Court is skeptical that *Lucia* is even controlling as to SSA ALJs.

Plaintiff has failed to show the ALJ was improperly appointed, that her challenge was timely, and that *Lucia* is even applicable. Accordingly, the Court will not remand based on Plaintiff's Appointments Clause challenge.

### III. Conclusion

The decision of the Commissioner is **AFFIRMED.** The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on July 1, 2019.

*/s/ Douglas N. Frazier*
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties